**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MARK A. BROOKS,

> Plaintiff,

v.                                                    CIVIL ACTION NO.   2:21-cv-00672

FAST CHANGE LUBE & OIL INC. et al.,

> Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss submitted by Defendants Fast Change Lube & Oil Inc. ("Fast Change") and Ed Sorrell ("Sorrell") (collectively "Defendants").   (ECF No. 3.)   For the reasons discussed more fully below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

*I.      BACKGROUND*

Plaintiff Mark A. Brooks ("Plaintiff") filed this action, alleging that his employment was unlawfully terminated after he was injured at work.   (ECF No. 1-1.)   On or about August 7, 2019, Plaintiff allegedly injured his right foot while at work, and, at some point, was diagnosed with a tear of his right foot peroneal tendon.   (*See id.* at 3, ¶¶ 7-8.)   Plaintiff claims he filed for West Virginia Worker's compensation benefits on October 25, 2019, but continued to work for Defendant Fast Change despite his pain.   (*Id.* at 4, ¶ 9-10.)   However, according to the Complaint, Plaintiff requested leave under the Family Medical Leave Act ("FMLA") on or about September 12, 2019, after his physician "informed him that if he did not rest his foot and take time off work,

1

his injury would become worse and likely permanent."   (*Id.* at ¶ 11.)   Plaintiff states that his request for FMLA leave was granted from September 16, 2019, through December 9, 2019, and that Defendants were aware of his FMLA leave.   (*Id.* at ¶ 12.)

Then, Plaintiff alleges that, on or about October 7, 2019, his physician issued him a written excuse from work until January 13, 2020, and Defendants were provided a copy of this excuse. (*Id.* at ¶ 13.)   Plaintiff claims he advised Defendants that he had a foot surgery scheduled for January 2020, and that "he was expected to be able to return to work soon thereafter."   (*Id.* at ¶ 14.)   Thus, Plaintiff states he did not return to work when his approved FMLA period ended on December 9, 2019.   (*Id.* at ¶ 15.)

Despite this excuse, Plaintiff alleges that, on or about December 19, 2019, Defendant Fast Change, by and through Defendant Sorrell, asked Plaintiff if he could return to work.   (*Id.* at 4-5, ¶ 16.)   Plaintiff claims that, although he replied that he could not return to work "per his doctor's recommendation," he also explained that once his surgery was completed in January 2020, "it would not be long before he could return to work."   (*Id.*)   Yet, Defendant Fast Change, by and through Defendant Sorrell, allegedly terminated Plaintiff without cause on that same day.   (*Id.* at 5, ¶ 17.)

Plaintiff then initiated this action in the Circuit Court of Logan County, West Virginia, on November 22, 2021.   (*See* ECF No. 1.)   The Complaint asserts claims for (1) "Retaliatory Discharge/Workers Compensation Discrimination" under the West Virginia Workers' Compensation Act ("WVWCA"), (2) "Disability Discrimination and Failure to Provide Accommodation," (3) "Retaliation and Discrimination of the [FMLA]."   (ECF No. 1-1 at 5–8.) Defendants removed the matter to this Court on December 27, 2021.   (ECF No. 1.)

The next day, Defendants filed the pending motion to dismiss the complaint for failure to state a claim upon which relief may be granted.   (ECF No. 4.)   Plaintiffs filed a response, (ECF No. 8), and Defendant timely relied, (ECF No. 9).   As such, this motion is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint.   Fed. R. Civ. P. 12(b)(6).   A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007).   A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.   In applying this standard, a court must utilize a two-pronged approach.   First, it must separate the legal conclusions in the complaint from the factual allegations.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged."   *Id.*   Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).   A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 555, 570.

3

### III.   DISCUSSION

In the pending motion, Defendants advance arguments against all of Plaintiff's asserted causes of action that they fail to state claims.[1]   Defendants also argue that Plaintiff failed to serve Defendant Sorrell and state a claim against Defendant Sorrell in his individual capacity.   Each is discussed below.

#### A.  State Administrative Decision

As an initial matter, the Court must determine whether to consider a decision rendered by the West Virginia Workers' Compensation Office of Judges ("OOJ"),[2] which was attached to Defendants' Motion to Dismiss.   (ECF No. 4 at 18.)   Defendants argue that Plaintiff failed to state a claim under § 23-5A-3 of the WVWCA[3] because the OOJ already found that Plaintiff did not suffer an injury in the course of and resulting from his employment.   (ECF No. 4 at 4-5.) Defendants reason that the Court can consider the OOJ decision because it is integral to the Complaint, (ECF No. 4 at 1 n.1), and because the doctrine of *res judicata* applies, (ECF No. 9 at

---

[1] Throughout their briefs, Defendants argue that Plaintiff failed to "state a prima facie claim."   (*See, e.g.*, ECF No. 4 at 6.)   However, as discussed more fully below, a plaintiff need not meet the prima facie elements to survive a Rule 12(b)(6) motion to dismiss.   Thus, for the purpose of this motion, the Court will construe Defendants' statements that Plaintiff failed to make a prima facie showing as arguments that Plaintiff failed to state a claim.

[2] In West Virginia, the Workers' Compensation Commission (the "Commission") renders an initial decision on an employee's compensation claim.   *See* W. Va. Code § 23-5-1(a).   If a party is dissatisfied with the Commission's decision, it can "object" and appeal the decision to the OOJ, *see* W. Va. Code §§ 23-5-1 to 23-5-6, which is composed of a chief administrative law judge ("ALJ") and a staff of ALJs who are authorized to review the Commission's decision *de novo*, *see* W. Va. Code §§ 23-5-8 & 23-5-9.   The OOJ's decision may be appealed to the Workers' Compensation Board of Review, *see* W. Va. Code § 23-5-11(b), and the final arbiter of workers' compensation disputes is the state supreme court, W. Va. Code § 23-5-15(a).

[3] Section Three provides the following:

> It shall be a discriminatory practice within the meaning of section one of this article to terminate an injured employee *while the injured employee is off work due to a compensable injury within the meaning of article four* of this chapter and is receiving or is eligible to receive temporary total disability benefits, unless the injured employee has committed a separate dischargeable offense.

W. Va. Code § 23-5A-3 (emphasis added).   For a compensable injury under article four, "three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment."   *Gill v. City of Charleston*, 783 S.E.2d 857, 861 (W. Va. 2016); *see also* W. Va. Code § 23–4–1(a).

6 n. 2).   While Plaintiff does not seem to object, (*see* ECF No. 8 at 6), the Court cannot consider the OOJ's decision at this juncture.

    1.  <u>The OOJ decision is not integral to the Complaint.</u>

    "Rule 12(b)(6) does not mandate that a district court treat a motion to dismiss as a motion for summary judgment simply because the moving party includes exhibits with its motion." *Pueschel v. United States*, 369 F.3d 345, 354 n.3 (4th Cir. 2004).   It "only requires that a motion to dismiss be treated as a motion for summary judgment when the motion to dismiss or exhibits present matters outside the nonmoving party's pleadings and the district court does not exclude such matters." *Id.*   Nevertheless, a court may consider extrinsic evidence at the 12(b)(6) stage if such evidence "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity."   *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).   This Court has previously explained the test to determine whether extrinsic documents are "integral" to a complaint:

> [T]he referenced document [must] be central or integral to the claim in the sense that its very existence, and not the mere information it contains, gives rise to the legal rights asserted. The cases illustrate this requirement. Thus, where a complaint in a fraud action references a document containing the alleged material misrepresentations, the referenced document may be considered part of the complaint. Similarly, a newspaper article reporting allegedly fraudulent statements by a corporate officer may be considered part of the complaint in a securities fraud action, and an allegedly libelous magazine article referred to in a complaint may be considered part of the complaint in a libel action based on that article.

*Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).

    Here, the OOJ's decision was not "integral to" or "explicitly relied on" in the Complaint.

Plaintiff's "asserted legal rights" arise from Defendants' alleged termination of his employment. These "legal rights" do not arise from his workers' compensation claim or the alleged denial thereof.   Although the OOJ decision may contain information regarding Plaintiff's claims, it is not, as Defendants suggest, integral to the Complaint because it does not give rise to the legal rights asserted by Plaintiff.   Therefore, Defendants' Motion to Dismiss must be converted to a motion for summary judgment *if* the Court is to accept the OOJ's decision attached thereto. Although conversion of a Rule 12(b)(6) motion to a motion for summary judgment lies within this Court's discretion, *see Camastro v. City of Wheeling*, 49 F. Supp. 2d 500, 502 (N.D. W. Va. 1998) (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)), the Court declines to consider the OOJ's decision in its disposition of Defendants' Motion to Dismiss.   Instead, the Court will proceed to examine this motion as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 2. The doctrine of collateral estoppel cannot be applied at the motion to dismiss stage.

Collateral estoppel,[4] also referred to as issue preclusion, is an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure.   The doctrine of collateral estoppel works to preclude "relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 356 n. 5 (1979).   Federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel."   *In re McNallen*, 62 F.3d 619, 624 (4th Cir. 1995).   However, if the Court is presented with an unreviewed state

---

[4] The Court notes that Defendants argued that the doctrine of *res judicata* applied.   However, *res judicata* is a "rule of fundamental and substantial justice," *Peugeot Motors of Am., Inc. v. E. Auto Distributors, Inc.*, 892 F.2d 355, 359 (4th Cir. 1989), whereby "a final judgment on the merits bars further claims by parties or their privies *based on the same causes of action*," *Young-Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir. 1991) (emphasis added) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).   Thus, because Defendants are arguing that the OOJ already decided the *issue* of whether Plaintiff sustained a compensable injury, the doctrine of collateral estoppel would apply, rather than the doctrine of *res judicata*.

administrative decision, the Full Faith and Credit Act, 28 U.S.C. § 1738, is inapplicable. *Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 191 (4th Cir. 1994).   In such a circumstance, the Supreme Court of the United States ("Supreme Court") set out a test for determining whether a federal court should give preclusive effect to the unreviewed factual findings of a state administrative body;[5] then, if that test is met, the Court turns to state law. *University of Tennessee v. Elliott*, 478 U.S. 788 (1986).

Under West Virginia law, the doctrine of collateral estoppel applies if four conditions are met:

> (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*State v. Miller*, 459 S.E.2d 114 (W. Va. 1995).

However, the Fourth Circuit has instructed that Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint, and generally does not reach the merits of an affirmative defense. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).   *Goodman* recognized that there are relatively "rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint[.]"   *Id.*   Thus, all facts necessary to the affirmative defense must clearly appear on the face of the complaint, *id.*, because "[t]o require otherwise would require a

---

[5] Specifically, the Supreme Court provided the following test:

> [W]hen a state agency [1] 'acting in a judicial capacity . . . [2] resolves disputed issues of fact properly before it [3] which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts.

*Elliott*, 478 U.S. at 798–99 (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)).

plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised," *id.* at 466.   Further, the Fourth Circuit later emphasized that incorporation by reference is not appropriate in this context, "[n]or should 'judicial notice' be used as an expedient for courts to consider 'matters beyond the pleadings' and thereby upset the procedural rights of litigants to present evidence on disputed matters."   *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 360 (4th Cir. 2013) (internal citations omitted).

Here, the Court cannot determine if collateral estoppel applies from the face of the Complaint.   *See Goodman*, 494 F.3d at 464.   First and foremost, while the Complaint states that Plaintiff filed for workers' compensation benefits on October 25, 2019, (ECF No. 1-1 at 4, ¶ 9), it does not indicate whether a decision was rendered or whether Plaintiff appealed any decision. Thus, the Court cannot analyze whether the Full Faith and Credit Act or federal common law applies.   Further, the Court cannot determine that "there was a final adjudication on the merits," or whether Plaintiff had a "full and fair opportunity to litigate the issue" under West Virginia law. Although these facts may be gleaned from the OOJ's decision, taking judicial notice of the prior adjudication would run afoul of *Waugh*.   Thus, the doctrine of collateral estoppel cannot be applied at this juncture.

Consequently, the OOJ's decision will not be considered in resolving the pending motion to dismiss.

B.  *Workers' Compensation Retaliation/Discrimination*

In Count One[6] of the Complaint, Plaintiff alleges that he was terminated for "filing for and/or receiving West Virginia Workers' Compensation benefits, an act protected by W. Va. Code § 23-5A-3" after he was injured "within the course and scope of" his employment with Defendant Fast Change.  (*See* ECF No. 1-1 at 4, ¶¶ 21-22.)   In response to Defendants' argument that Plaintiff failed to state a claim under § 23-5A-3, Plaintiff counters that "Defendants' argument fails to acknowledge the elements of a claim for workers' compensation discrimination and/or retaliation as contained in W. Va. Code § 23-5A-1[.]"   (ECF No. 8 at 5.)   In reply, Defendants argue that, even though Plaintiff is attempting to improperly assert a new cause of action under § 23-5A-1, he still fails to state a claim.   (*See* ECF No. 9 at 5.)   As discussed more fully below, Defendants are mistaken.

The Supreme Court of Appeals of West Virginia ("WVSCA") established the following test for a claim under West Virginia Code § 23–5A–1:

> In order to make a prima facie case of discrimination under W. Va. Code, 23–5A–1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W. Va. Code, 23–1–1, *et seq.*; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee.

Syl. Pt. 1, *Powell v. Wyoming Cablevision, Inc.*, 403 S.E.2d 717, 718 (W. Va. 1991); *compare with* W. Va. Code § 23-5A-3 and *Gill*, 783 S.E.2d at 861.

Admittedly, the Complaint describes Plaintiff's injury as occurring "within the course and scope of" employment, *see Gill*, 783 S.E.2d at 861, as opposed to "an on-the-job injury," *see* W. Va. Code § 23-5A-1, and asserts that Plaintiff "did not commit any separate dischargeable offense," (ECF No. 1-1 at 6, ¶ 25), which is language taken verbatim from section three.   Still,

---

[6]  The Complaint mislabels this count, which is the first cause of action listed, as "Count 2."   (ECF No. 1-1 at 5.)

Plaintiff only references section three in the Complaint—he did not explicitly state he is asserting a claim under section three.

Further, the Complaint's factual allegations support a plausible claim under section one. For the first two elements, Plaintiff alleges that his foot was injured while he was at work,[7] (ECF No. 1-1 at 2, ¶ 7), and that he was "filing for and/or receiving" workers' compensation benefits, (*id.* at 5, ¶ 21).   For the third element, Plaintiff claims that, during his employment, he "completed all of his job duties in a satisfactory or above satisfactory manner and committed no separate dischargeable offense," (*id.* at 3, ¶ 5), and that Defendants' retaliatory motive can be inferred from the temporal proximity between his workers' compensation claim and termination, (*see id.* at 6, ¶ 24).   Thus, while it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Greene v. Ballard*, No. 2:17-CV-02897, 2020 WL 1482568, at *2 (S.D. W. Va. Mar. 27, 2020), *appeal dismissed*, 823 F. App'x 204 (4th Cir. 2020), the Complaint's factual allegations support a plausible claim under § 23-5A-1.

Accordingly, Defendants' Motion to Dismiss Plaintiff's WVWCA claim is **DENIED**.

C. *Retaliation under the Family Medical Leave Act*

An FMLA retaliation claim arises under 29 U.S.C. § 2615(a)(2), which states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."   "[A] plaintiff can either (1) produce direct and indirect evidence of retaliatory animus or (2) demonstrate intent by circumstantial evidence, which [courts] evaluate under the framework established for Title VII

---

[7] Although Defendants argue that Plaintiff cannot establish the first element because the OOJ allegedly found that Plaintiff did not sustain an on-the-job injury, the Court is not considering the OOJ decision in resolving this motion to dismiss, as discussed above.

cases in *McDonnell Douglas*." *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2595, 209 L. Ed. 2d 732 (2021) (internal quotations and citations omitted). An FMLA retaliation plaintiff proceeding under the *McDonnell Douglas* framework "must first make a prima facie showing [1] that he engaged in protected activity, [2] that the employer took adverse action against him, and [3] that the adverse action was causally connected to the plaintiff's protected activity." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (internal quotation marks omitted). "Once the plaintiff proffers evidence establishing his prima facie case, and the employer offers a non-retaliatory reason of the adverse action, the plaintiff 'bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation.'" *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016) (quoting *Yashenko*, 446 F.3d at 551).

However, a plaintiff "need not plead a prima facie case" at the motion to dismiss stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002); *see Woods v. City of Greensboro*, 855 F.3d 639, 646 (4th Cir. 2017). Rather, as the Supreme Court[8] explained, the "prima facie case" requirement of *McDonnell Douglas* applies only at the summary judgment phase because it "is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510. Therefore, the framework set forth in *McDonnell Douglas* and its shifting burdens of proof are inapplicable to the instant analysis.

---

[8] In *Swierkiewicz*, the Court relied in part on the long-used minimal pleading standard adopted in *Conley v. Gibson*, 355 U.S. 41 (1957). *See Swierkiewicz*, 534 U.S. at 512–14. In *Iqbal* and *Twombly*, however, the Court abandoned *Conley*'s "no set of facts" test and adopted instead a plausibility standard of pleading. *Iqbal*, 556 U.S. at 669–70; *Twombly*, 550 U.S. at 562–63. Still, *Twombly* expressly reaffirmed *Swierkiewicz*'s holding that the "'use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements,'" *Twombly*, 550 U.S. at 570, and the Fourth Circuit explicitly held that *Swierkiewicz*'s instruction that a "plaintiff need not plead a prima facie case . . . to survive [a] motion to dismiss" is still binding precedent, *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015).

Here, Plaintiff asserts a retaliation claim under the FMLA, alleging that Defendants "retaliated and discriminated" against him by terminating his employment because he took FMLA leave.[9]   (*See* ECF No. 1-1 at 7-8, ¶¶ 36-37.)   However, in the motion to dismiss, Defendants claim that Plaintiff cannot satisfy the first element because Plaintiff "confirmed that upon the expiration of his FMLA, he was unable or unwilling to return to work."   (ECF No. 4 at 11-12.)   Thus, while it cannot be disputed that taking FMLA leave is a protected activity, *see Yashenko*, 446 F.3d at 551, Defendants argue that the first element is not satisfied because Plaintiff was not engaged in a protected activity *at the time of his alleged termination*, (*see* ECF No. 4 at 13).   This argument is unpersuasive for a number of reasons.

Notably, it would defy common sense to believe that an employee cannot be retaliated against simply because they are no longer engaged in a protected activity.   *See Iqbal*, 556 U.S. at 679 (explaining that a review of the complaint is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").   For example, based on Defendants' argument, a plaintiff who is terminated immediately upon his or her return to work after taking FMLA leave would not have a claim for retaliation because he or she was not terminated *while* on FMLA leave.   *But see Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 720 (4th Cir. 2013) (finding that the plaintiff established a prima facie case of FMLA retaliation when she was suspended on the morning of her return from FMLA leave and then terminated within a month).   Thus, Defendants' overly broad interpretation would turn section 2615(a)(2)'s proscriptive right

---

[9] There are two types of claims under the FMLA: (1) unlawful interference with FMLA rights, 29 U.S.C.A. § 2615(a)(1), and (2) unlawful retaliation related to the exercise of FMLA rights, *id.* § 2615(a)(2).   Here, although the Complaint alleged that Plaintiff's termination "unlawfully interfered with, restrained, and/or denied Plaintiff Brooks the exercise of his FMLA rights," (ECF No. 1-1 at 7-8, ¶ 37), Plaintiff concedes that he did not assert a claim for interference with the FMLA, (ECF No. 8 at 10).   Thus, any claim for FMLA interference is **DISMISSED**.

into an almost empty and unenforceable pronouncement.

Additionally, the plain language of the statute does not support Defendants' argument. *See Banker v. Banker*, 474 S.E.2d 265, 476-477 (W. Va. 1996) ("It is not for [courts] arbitrarily to read into [a statute] that which it does not say"). Moreover, Defendants' interpretation is contrary to federal common law and wholly unsupported by any cited legal authority, as discussed below.

To start, Defendants' interpretation is contradicted by clearly established Fourth Circuit and Supreme Court precedent, which provides that the third element of causation for a prima facie case can be established if the "'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'" *Shields v. Fed. Express Corp.*, 120 Fed. Appx. 956 (4th Cir. 2005) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)) (per curiam); *see also Yashenko*, 446 F.3d at 551. While there is no bright line timeframe to establish causation for a prima facie case, the Fourth Circuit has held that a one-month period between the protected activity and an adverse employment action is sufficient to create a jury question regarding the causation prong of a prima facie case. *See Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 247 (4th Cir. 2015). Thus, it is clear a plaintiff does not have to be engaged in the protected activity at the time of the adverse employment action for an FMLA retaliation claim.

Additionally, Defendants cite to laws governing an *interference* claim for the denial of Plaintiff's substantive right to resume his position at the end of his FMLA leave.[10]  Specifically,

---

[10] An FMLA interference claim arises under 29 U.S.C. § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." In particular, following any FMLA leave, "an employee has the right to reinstatement to his or her original position or an equivalent post." *Vannoy*, 827 F.3d at 301 (citing 29 U.S.C. § 2614(a)(1)). On the other hand, an employee who has returned from such leave is not entitled to "any right, benefit, or position of employment" that the employee would not have been entitled to "had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). In particular, "[i]f the employee is unable to perform an essential function of the position because of a physical or

Defendants quote C.F.R. § 825.216(c), which outlines the parameters of an employee's right to reinstatement after taking FMLA leave and, thus, relates to an interference claim, (*see* ECF No. 4 at 11-12), and one of the cases Defendants cite to for support analyzes an FMLA interference claim, *see Hall v. Grant Cnty. Bd. of Educ.*, No. 2:07-CV-98, 2009 WL 10710240, at *1 (N.D.W. Va. Jan. 28, 2009) (granting summary judgment on the plaintiff's FMLA interference claim in favor of defendant because the plaintiff could not return to work after his FMLA leave expired). Because FMLA interference and retaliation claims are very clearly not interchangeable, these legal authorities are inapplicable.

Further, every single case Defendants cite to for support are at the motion for summary judgment stage.   *See Boone v. Bd. Of Governors of Univ. of N. Carolina,* 858 F. App'x 622, 624 (4th Cir. 2021) (affirming the district court's grant of summary judgment on the plaintiff's FMLA retaliation claim in favor of the defendant because the plaintiff failed to rebut the defendant's proffered reason for termination); *see Sabouri-Yazdi v. Red Coats, Inc.*, 751 F. App'x 389, 391 (4th Cir. 2018) (affirming the district court's grant of summary judgment on the plaintiff's FMLA retaliation claim in favor of defendant because the plaintiff was not engaged in activity protected by the FMLA at the time of her termination); *Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 193 (4th Cir. 2017) (affirming district court's grant of summary judgment for an FMLA retaliation claim because there was no evidence that employer's proffered reason for terminating employee was pretextual).   While this difference in procedural posture is substantial, it is even more significant when analyzing a claim under the *McDonnell Douglas* framework.   As an evidently necessary reminder, Plaintiff must only plead "sufficient facts, which, if proven, would entitle him

---

mental condition . . . the employee has no right to restoration to another position under the FMLA."   29 C.F.R. § 825.216(c).

to relief under a cognizable legal claim" at the motion to dismiss stage.   *Twombly*, 550 U.S. at 55.

Importantly, Plaintiff does not even have to make a prima facie case of FMLA retaliation at the

motion to dismiss stage.   *Swierkiewicz*, 534 U.S. at 515.   Thus, although Plaintiff's alleged

inability to perform his duties could be a "non-retaliatory reason" for terminating Plaintiff's

employment under the second step of the *McDonnell Douglas* framework, *see, e.g.*, *Yashenko*, 446

F.3d at 551 (finding that employee's termination was the result of legitimate reasons unrelated to

FMLA request rather than retaliation), Plaintiff does not have to rebut this at the motion to dismiss

stage, *see Swierkiewicz*, 534 U.S. at 510, 515.   Rather, as Defendants' cited cases clearly

demonstrate, this argument would be more appropriate on a motion for summary judgment or at

trial.   *See id.*

Accordingly, Defendants' Motion to Dismiss Count III of the Complaint for FMLA

retaliation is **DENIED**.

### D.  Disability Discrimination and Failure to Provide Accommodation

In the Complaint, Plaintiff asserts a claim for Disability Discrimination and Failure to

Provide an Accommodation.   (ECF No. 1-1 at 5.)   Plaintiff states that he suffered a "substantial

foot injury, which constituted [] a temporary disability," because he was "unable to walk without

assistance and/or be on his feet for a period of time."   (*Id.* at 6, ¶ 28.)   Plaintiff further alleges

that Defendants treated him in a disparate manner "based at least in part upon his disabilities," by

denying him an accommodation by terminating his employment.   (*See id.* at ¶ 30.)

The West Virginia Human Rights Act ("WVHRA") provides that "it shall be an unlawful

discriminatory practice for any employer to discriminate against an individual with respect to

compensation, hire, tenure, conditions or privileges of employment if the individual is able and

competent to perform the services required even if such individual is . . . disabled[.]"  W. Va. Code § 5-11-9(1).  To establish a claim of disability discrimination under the WVHRA, a "plaintiff must show that he is a disabled person within the meaning of the law, that he is qualified to perform the essential functions of the job (either with or without reasonable accommodation), and that he has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises."  *Skaggs v. Elk Run Coal Co.*, 479 S.E.2d 561, 582 n.22 (W. Va. 1996).  As with Plaintiff's claim under the FLMA, Plaintiff's claim under the WVHRA will eventually be subject to the burden-shifting paradigm pronounced in *McDonnell Douglas*, *see id.* at 581-82, but, at the motion to dismiss stage, Plaintiff need only plead a plausible claim, *see Swierkiewicz*, 534 U.S. at 510, 515.

Here, Defendants move to dismiss this claim, arguing that Plaintiff has failed to state a prima facie case of discrimination disability.  More specifically, Defendants contend that (1) Plaintiff is not a qualified individual capable of performing the essential functions of his job, and (2) an additional extended leave of absence is not a reasonable accommodation.   (ECF No. 4 at 6-10.)  Each is discussed in turn below.

1.  Qualified Individual

A "qualified disabled person" is one who is able "to perform essential functions of the job" whether or not he requires reasonable accommodation.  *Skaggs*, 479 S.E.2d at 573–74; *see also* W. Va. Code § 5-11-9.  Importantly, "[a] 'qualified disabled person' who is protected by [the WVHRA] includes a person who has a disability and is temporarily unable to perform the requirements of the person's job due to their disability, with or without accommodation."  Syl. Pt. 3, *Haynes v. Rhone–Poulenc, Inc.*, 521 S.E.2d 331, 344 (W. Va. 1999).  In *Haynes,* the plaintiff

16

was unable to work due to complications associated with her pregnancy.  *Id.* at 333.   The plaintiff's physician submitted a form to the defendant stating that plaintiff's uncertain "anticipated return to work date," was "3/1/97 ??," *id.*, but the defendant eliminated plaintiff's job on January 9, 1997, id. at 336.   When the plaintiff sued the defendant for disability discrimination under the WVHRA, the defendant argued that it had no idea when—or even whether—the plaintiff was going to return to work.  *Id.* at 336-37.   However, under those circumstances, the WVSCA found that the plaintiff was a qualified individual with a disability because the plaintiff's "temporary inability to perform the requirements of his or her job" would be remedied by the end of her leave, as evidenced by her physician's note.  *Id.* at 344.

In the present motion, Defendants claim that Plaintiff is not a qualified disabled person because he was "incapable of doing the work," (ECF No. 4 at 7), and, thus, "must meet the expanded definition under the total temporary disability condition, (ECF No. 9 at 7.)    To that extent, Defendants also argue that "Plaintiff's alleged disability was not temporary as there was no known date for his recovery and no known date that he would be able to return to work, if at all."   (*Id.*)   According to Defendants, "Plaintiff's physician extended and re-extended his recommended time off work," there was "no doctor's note stating an anticipated date for the surgery," "or an anticipated date that Plaintiff would return [to work,]" and "Plaintiff did not represent that it was even likely that [he] could return to work."   (*Id.* at 8.)

However, "viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff," *Twombly*, 550 U.S. at 570, Plaintiff has made a plausible showing that his alleged disability was temporary.  Like the plaintiff in *Haynes*, Plaintiff was unable to work due to a medical disability, as his doctor determined that Plaintiff's injury would

become worse and likely permanent if he did not rest his foot.   (ECF No. 1-1 at 4, ¶ 11.)   Similar

to the doctor's note in *Haynes*, the note from Plaintiff's doctor requested an extension of leave

until the specific date of January 13, 2020.   Although this note did not specify that this was

Plaintiff's "anticipated return to work date," Defendants were informed that Plaintiff expected to

return to work "soon" and "not [] long" after his surgery, which was scheduled for January.   (*See

id.* at ¶¶ 14, 16.)   Thus, Plaintiff has made a plausible showing that he is a qualified disabled

person under the WVHRA.

　　　　2.　Reasonable Accommodation

　　　　"[T]he West Virginia Human Rights Commission and [the WVSCA] have inferred that

[the WVHRA] imposes [a] duty of reasonable accommodation," *i.e.*, "an affirmative obligation

[on employers] to provide reasonable accommodation for disabled individuals."   *Skaggs*, 479

S.E.2d at 574.   To state a claim for breach of that duty, the plaintiff must plead the following

elements:

> (1) The plaintiff is a qualified person with a disability; (2) the employer was aware
> of the plaintiff's disability; (3) the plaintiff required an accommodation in order to
> perform the essential functions of a job; (4) a reasonable accommodation existed
> that met the plaintiff's needs; (5) the employer knew or should have known of the
> plaintiff's need and of the accommodation; and (6) the employer failed to provide
> the accommodation.

*Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589, 593 (S.D.W. Va. 2008)

(citing *Skaggs*, 479 S.E.2d at 575).

　　　　Here, Defendants only argue that an additional extended leave of absence is not a

reasonable accommodation under the fourth element because Plaintiff did not give a specific date

of return or indicate a likelihood of returning to work.   (ECF No. 4 at 8-10.)   Conversely, Plaintiff

counters that his physician "provided a date that Plaintiff could return to work" and that Plaintiff

"only needed an accommodation of an additional three to four weeks off from work[.]"   (ECF No. 8 at 10.)

Undoubtably, a "required reasonable accommodation may include a temporary leave of absence . . . for the purpose of recovery from or improvement of the disabling condition that gives rise to an employee's temporary inability to perform the requirements of his or her job."   Syl. Pt. 3, *Haynes*, 521 S.E.2d at 332, 344.   Such a leave of absence should, however, be "of limited duration, so that following a temporary leave of absence for treatment and improvement, it is reasonably foreseeable that the plaintiff is likely to be able to return to work."   *Id.* at 344 n.17. Consequently, although "it is clear . . . that a duty is imposed upon the employer to reasonably accommodate the [disabled] employee," *Morris Mem'l Convalescent Nursing Home, Inc. v. W. Virginia Hum. Rts. Comm'n*, 431 S.E.2d 353, 359 (1993), such duty is limited where it is not "reasonably foreseeable that the plaintiff is likely to be able to return to work" following a "totally disabling medical condition," *Haynes*, 521 S.E.2d at 344; *cf. Skaggs*, 479 S.E.2d at 579-80.

In this case, Plaintiff has plead sufficient facts to show that his requested leave was a reasonable accommodation at the motion to dismiss stage.   As discussed above, although the note from Plaintiff's doctor did not indicate a specific date Plaintiff could return to work, Defendants were informed that Plaintiff expected to return to work soon after his surgery, which was scheduled in January.   Thus, it is plausible that Plaintiff's requested leave was "of limited duration," and that it was "reasonably foreseeable" that he would "likely to be able to return to work."   *See Haynes*, 521 S.E.2d at 344 n. 17.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Count II for Failure to Provide an Accommodation and Disability Discrimination.

### E. Proper Service

Next, Defendants argue that any claims against Defendant Sorrell must be dismissed for lack of jurisdiction under Rule 12(b)(2), (5) because he was not served.[11]   (ECF No. 4 at 13-14.) Conversely, Plaintiff asserts that the time period for Plaintiff to complete service upon Defendant Sorrell has not yet ended under the Federal Rules of Civil Procedure, and, thus, this matter is not ripe yet.   (ECF No. 8 at 12 (citing Fed. R. Civ. P. 4(m).)

While the time period for Plaintiff to complete service had not yet ended at the time he filed his Response, it has since expired without a record of any additional attempts to serve Defendant Sorrell.[12]   Thus, because the only attempted service occurred prior to Defendants' removal of this action, the propriety of service must be determined under West Virginia law.   *See Wolfe v. Green*, 660 F. Supp. 2d 738, 745–46 (S.D. W. Va. 2009) (explaining that state law governs whether service was proper when service of process occurred prior to removal); Fed. R. Civ. P. 81(c)(1) (providing that the Federal Rules govern attempts to serve process after removal).

West Virginia Rule of Civil Procedure 4(d)(1) provides that service can be effected by, *inter alia*, "[t]he clerk sending a copy of the summons and complaint to the individual to be served by certified mail, return receipt requested, and delivery restricted to the addressee[.]"   W. Va. R. Civ. P. 4(d)(1)(D).   Generally, if the plaintiff fails to effect service of process within 120 days after the filing of the complaint, the court should dismiss the action against that defendant without prejudice.   Syl. Pt. 3, *Burkes v. Fas–Chek Food Mart, Inc.*, 617 S.E.2d 838, 842 (W.Va. 2005);

---

[11] A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint.   Fed. R. Civ. P. 12(b)(5).   A Rule 12(b)(2) motion is the proper vehicle for challenging the district court's jurisdiction over the defendant's person.   Fed. R. Civ. P. 12(b)(2).   Because proper service would give the Court jurisdiction over Defendant Sorrell pursuant to Federal Rule of Civil Procedure 4(k)(1), the issues of personal jurisdiction and service can be treated as a single inquiry.

[12] Under West Virginia and federal law, the plaintiff has the burden of showing service was proper.   *McCoy v. Norfolk S. Ry. Co.*, 858 F. Supp. 2d 639, 651 (S.D. W. Va. 2012); *Childress v. Thompson*, 489 S.E.2d 499, 502 (W. Va. 1997).

*see also* W. Va. R. Civ. P. 4(k).   However, the time for service must be extended if the plaintiff shows "good cause" for the failure.   Syl. Pt. 3, *Burkes*, 617 S.E.2d at 842; *see also* W. Va. R. Civ. P. 4(k).   Absent a showing of good cause, a court may still "in its discretion extend the time for service."   Syl. Pt. 3, *Burkes*, 617 S.E.2d at 842; *see also* W. Va. R. Civ. P. 4(k).

In this case, Plaintiff filed his Complaint on November 22, 2021.   (ECF No. 1-1 at 1.)   Consequently, he had until approximately March 22, 2022, to perfect service.   Plaintiff attempted service on Defendant Sorrell on November 22, 2021, through the West Virginia Secretary of State, in accordance with Rule 4(d)(1)(D) but acknowledges that "a green card marked with restricted deliver was returned unsigned to the Logan County Circuit Clerk and filed in this matter" on December 7, 2021.   (ECF No. 8 at 12.)   Further, Plaintiff has not argued that good cause exists as to why service has not been effected, and, because Plaintiff had notice and sufficient time to obtain service, no good cause appears to exist.   *See Burkes*, 617 S.E.2d at 845 ("To establish good cause under Rule 4(k), the [party] must show more than mere inadvertence, neglect, misunderstanding, or ignorance of the rule or its burden.").

Nonetheless, the Court does have discretion to enlarge the 120–day period, even if there is not good cause.   *Burkes*, 617 S.E.2d at 845.   The WVSCA provided four factors to consider in making this determination: "(1) whether the defendant evaded service, (2) whether the defendant knowingly concealed a defect in service, (3) whether the statute of limitations has expired, and (4) whether the defendant has been prejudiced by the failure to serve."   *Id.* at 844-45.

Analyzing the factors above, the Court will exercise its discretion to relieve Plaintiff of the consequences of his untimely service of process.   The first two factors are inapplicable, as no facts in the record exist that suggest or prove Defendants evaded service or concealed defects.   The

third factor concerning the statute of limitations weighs in Plaintiff's favor, as dismissal would effectively bar Plaintiff's claim.[13]   And, for the fourth factor, Defendant Sorrell faces no prejudice by extending the service of process deadline because he clearly knows of the pendency of this litigation, as he joined in the notice of removal, pending motion to dismiss, and Rule 26(f) meeting. (*See* ECF Nos. 1, 3, 10.)

Thus, the Court **DENIES WITHOUT PREJUDICE** Defendants' Motion to Dismiss the claims against Defendant Sorrell based on failure of service of process and **ORDERS** Plaintiff to serve Defendant Sorrell within 45 days of the entry of this Order.

### F.  *Claim against Sorrell*

Defendants move to dismiss any claims against Defendant Sorrell because Plaintiff has failed to state a cognizable claim against him as an individual.   (ECF No. 4 at 14.)   Defendants argue that no claim against Defendant Sorrell, as an individual, can exist because "[b]ased on Plaintiff's own pleadings, all claims against Defendant Sorrell were asserted in his capacity *as an employee and supervisor* of Fast Change—*rather than in his individual capacity*."   (ECF No. 9 at 14 (emphasis added).)   Further, Defendants assert that Plaintiffs' claims "require an act or omission by an employer or a representative of the employer," and Defendant Sorrell was neither Plaintiff's employer nor a representative of Defendant Fast Change.   (*See* ECF No. 4 at 14.)

However, there is no doubt that the WVHRA provides a cause of action for disability discrimination perpetrated by individuals, including supervisors and/or fellow employees.   *See* W. Va. Code § 5-11-9(7); *Holstein v. Norandex, Inc*., 461 S.E.2d 473 (W. Va. 1995).   Indeed, any

---

[13] As mentioned earlier, Plaintiff's termination occurred on December 19, 2019, and the statute of limitations on a claim under the WVHRA is two years.   *Wilfong v. Chenoweth Ford, Inc.*, 451 S.E.2d 773, 779 (W. Va. 1994); *Cooper v. Norfolk & W. Ry. Co.*, 870 F.Supp. 1410 (S.D. W.Va.1994).

person, whether or not that person has decision-making or supervisory authority, can be liable under the WVHRA if that person "aid[s], abet[s], incite[s], compel[s], or coerce[s] any person to engage in any of the unlawful discriminatory practices defined in [the Act]." W. Va. Code § 5-11-9. Thus, Plaintiff can, "as a matter of law, bring a claim against" Defendant Sorrell as an individual. *See Simmons v. Taco Bell of Am., Inc.*, No. 2:11-CV-00125, 2011 WL 2076413, at *2 (S.D. W. Va. May 25, 2011).

The question is, did he? Defendants argue that Plaintiff did not assert a claim under § 5-11-9(7) and cannot do so now for the first time in his Response to the motion to dismiss. (ECF No. 9 at 14.) Conversely, Plaintiff uses the federal pleading standard to argue that his allegation that Defendant Sorrell was the one who terminated Plaintiff must be viewed in the light most favorable to him. (*See* ECF No. 8 at 13.)

Looking to the Complaint, Plaintiff asserts a cause of action for failure to provide an accommodation and disability discrimination generally "in violation of the [WVHRA]." (ECF No. 1-1 at 6-7.) The Complaint indicates that Defendant Sorrell acted as Plaintiff's supervisor, (*id.* at 3, ¶ 3), and does not include an allegation of a specific violation of § 5-11-9(7), or the word(s) "aid, abet, incite, compel, or coerce." However, Plaintiff does assert that Defendant Sorrell "participated in the alleged discrimination which ultimately resulted in the [alleged] wrongful discharge of [] Plaintiff." *See Farmer v. Spartan Mining Co., LLC*, No. 5:18-CV-00534, 2019 WL 956812, at *5 (S.D. W. Va. Feb. 27, 2019); *cf. Mills v. Blackhawk Mining, LLC*, No. 2:15-cv-13338, 2015 WL 6511316 (S.D. W. Va. Oct. 28, 2015). Specifically, Plaintiff alleges that Defendant Sorrell had actual and/or constructive knowledge of Plaintiff's disability, (ECF No. 1-1 at 6, ¶ 29), and Plaintiff informed Defendant Sorrell that he would return to work after he had

23

surgery on his foot in January, but that Defendant Sorrell terminated Plaintiff's employment anyway, (*see* ECF No. 1-1 at 5, ¶¶ 16-17).   Thus, at the motion to dismiss stage, the Complaint's factual allegations support a plausible claim against Defendant Sorrell, as an individual, under West Virginia Code § 5-11-9(7).

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss the claims against Defendant Sorrell.

*G.  Repleading*

Lastly, while Plaintiff acknowledges that complaints filed in state court are subject to the federal pleading standard after removal, (ECF No. 8 at 4), he also asks the Court to order him "to replead his complaint pursuant to Federal Rule of Civil Procedure 81(c)(2)"[14] if "the pleadings do not meet the requirements under *Iqbal* and *Twombly*," (*id.* at 5, 14-15.)   It is clear Defendants faced difficulty in discerning what claims were being asserted; whereas, if the Complaint were repleaded with clarity and precision, Defendants would be able to frame a responsive pleading to Plaintiff's claims, and this matter could proceed more expeditiously.   Thus, finding repleading necessary in this instance, the Court orders Plaintiff to replead his Complaint.

*IV.    CONCLUSION*

For these reasons, the Defendants' Motion to Dismiss, (ECF No. 3), is **GRANTED IN PART** and **DENIED IN PART**.   The Court **DISMISSES** any FMLA interference claim alleged in Count III.   As to all other claims, Defendants' Motion to Dismiss is **DENIED**.   Additionally,

---

[14] Rule 81(c)(2) states that "[a]fter removal, repleading is unnecessary unless the court orders it."   Additionally, although Plaintiff does not cite to it, Rule 15 provides that the Court should "freely give" leave to amend "when justice so requires," Fed. R. Civ. P. 15(a)(1), (2), in the absence of any apparent or declared reason—such as futility of the amendment, *Everett v. Prison Health Servs.*, 412 F. App'x 604, 606 (4th Cir. 2011).

the Court **ORDERS** Plaintiff to replead his Complaint within 15 days of the entry of this Order and **ORDERS** Plaintiff to serve Defendant Sorrell within 30 days of the filing of the amended complaint.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        May 31, 2022

_____
THOMAS E. JOHNSTON, CHIEF JUDGE